UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                                           Case No. 12-75455 (DE)

      SHEBA REALTY CORP.,                          Chapter 11

             Debtor.

------------------------------------------------------------X


### REPLY MEMORANDUM OF LAW IN OPPOSITION OF DEBTOR'S OBJECTION TO THAT PORTION OF CLAIM NUMBER 3 FILED BY ADHY ADVISORS LLC SEEKING INTEREST AT THE DEFAULT RATE OF 20%


**BERLINER & PILSON, ESQS.**
Richard J. Pilson, Esq.
*Attorneys for ADHY Advisors LLC*
40 Cuttermill Road, Suite 308
Great Neck, New York 11021
Tel No.:  (516) 304-5555

# TABLE OF CONTENTS

**Page**

Table of Contents.......................................................................................... 2

Table of Authorities...................................................................................... 3

Table of Statutes .......................................................................................... 4

Preliminary Statement.................................................................................. 5

Argument: ................................................................................................... 13

    Point I: No Notice Was Required To Trigger Default Interest ..................... 13

    Point II: The Weight of Second Circuit Authority Holds That That There Is
        No Basis To Reduce Default Interest For The Purpose Of Benefitting
        Equity Holders Where A Debtor Seeks To Reinstate A Secured Claim
        Under Section 1124(2) of The Bankruptcy Code ................................ 14

    Point III: Debtor's Estoppel/Waiver Interest Argument Cannot Be
        Maintained............................................................................................ 18

Conclusion .................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

**Page**

*139-141 Owners Corp.*, 313 B.R. 364 (Bankr. S.D.N.Y., 2004)....................................... 14, 15

*785 Partners,* 470 B.R. at 134......................................................................................... 15

*Adejobi*, 404 B.R. 78 (Bankr. E.D.N.Y. 2009) .................................................................. 14

*General Growth Properties, Inc.*, 451 B.R. 323 (Bankr. S.D.N.Y., 2011) ............................. 14

*P.G. Realty Co.*, 220 B.R. 773, 780 (Bankr. E.D.N.Y. 1998) ............................................... 16

*Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959) ................................................................. 17

*South Side House*, 451 B.R. 248, 264 (Bankr. E.D.N.Y. 2001) ........................................... 14

*Sutton Realty LLC* 2012WL 6681845, 12-10119 (SMB) December 21, 2012................... 15, 18

*Urban Communicators PCS Ltd. P'ship*, 394 B.R. 325 (S.D.N.Y. 2008) ............................. 14

*Vanderveer Estates Holdings, Inc.*, 283 B.R. 122 (Bankr. E.D.N.Y. 2002) ........................... 15

*Vest Assocs.*, 217 B.R. 696, 702 (Bankr. S.D.N.Y. 1998) .................................................... 15

# <u>STATUTES</u>

<u>**Page**</u>

11 U.S.C. § 1124(2) ................................................................................................. 14

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In Re:                                                                  Case No. 12-75455 (DE)

      SHEBA REALTY CORP.,                              Chapter 11

             Debtor.

------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEBTOR'S OBJECTION TO THAT PORTION OF CLAIM NUMBER 3 FILED BY ADHY ADVISORS LLC SEEKING INTEREST AT THE DEFAULT RATE OF 20%

This Reply Memorandum of Law is respectfully submitted on behalf of ADHY Advisors LLC ("ADHY") in opposition to the Debtor's, Sheba Realty Corp. ("Debtor"), objection to the portion of ADHY's secured claim (Claim No. 3) seeking payment of accrued interest at the default rate of twenty (20%) percent per annum.

### Preliminary Statement

At the onset, it should not be overlooked that Debtor has filed this bankruptcy for the sole purpose of attempting to shed its legal obligations under the Note and Mortgage. Debtor has not shown, as is necessary, that the payment of the twenty (20%) percent interest rate will impair a single other creditor.

In fact, Debtor openly admits that this was its sole purpose in filing the Bankruptcy. This type of forum shopping and misuse of laws designed to help Debtors who legitimately need relief from this Court should, on its face, be repugnant.

The filing of this Bankruptcy, in essence, stayed a lawfully commenced foreclosure action wherein Debtor has raised the exact same issues before the Supreme Court, New York County,

5

under Index No. 860060/2011. Attached as Exhibit "A" to the Declaration of Richard J. Pilson is a copy of Debtor's Answer with Counterclaims as Defendant in the pending (but stayed) Foreclosure Action where it requests essentially the same relief as herein. It should also be noted that in the "Fourteenth Affirmative Defense", contained in said Answer in particular paragraph 65 thereof, Debtor, as Defendant in that action, openly admits to receiving the May 11, 2010 "acceleration letter" from Astoria that is now disavows receiving, estopping the Debtor's denial of receipt.

Even prior to the commencement of the Foreclosure Action, Debtor, as Plaintiff in an earlier case it itself sought a Declaratory Judgment, raising essentially the same issues. See Exhibit "B" to the Declaration of Richard J. Pilson (Amended Complaint in Supreme Court action under Index No. 112310/2010, commenced September 17, 2010) ("Declaratory Action"). This action is still pending, but like the Foreclosure Action, is stayed by the instant bankruptcy filing.

In the Declaratory Action, Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP ("GWFG"), who is the attorney for Debtor in both the Foreclosure and Declaratory Actions, moved to preempt any foreclosure action by Order to Show Cause (Exhibit "C" to the Declaration) on the same grounds of waiver as raised herein. This Motion was denied by the Hon. Richard Sherwood (Exhibit "D" to the Declaration).

Thus, what we have here is, in essence, a "Debtor" who is attempting to utilize the Bankruptcy Code to avoid what it could not in State Court, despite the fact that there are no creditors being impaired in any way, nor was there any danger of Debtor ever being insolvent in any manner, shape or form. Moreover, having received an unfavorable decision in State Court

on the issues raised herein, the principal of Res Judicata precludes any re-litigation of issues herein.

In its Memorandum of Law, the Debtor has raised a multitude of reasons arguing against the validity of the Acceleration Letter served by ADHY's predecessor, Astoria Federal Savings and Loan Association ("Astoria"), a non-party to this case.  This reasoning is fundamentally wrong, however.  Because even if the Acceleration Letter is invalid, it is not the acceleration of the balance due under the Note which provides the right of ADHY to impose default interest under the Mortgage and Note, but the clear, unequivocal default of Debtor as provided by the terms of the Note and Consolidated Mortgage.

The Mortgage Note, attached as Exhibit "B" to Debtor's moving papers, provides as follows:

> "In the event any monthly payment due hereunder is not paid within fifteen (15) days after such payment first becomes due, there shall be added to such payment, as liquidated damages, and not as a penalty, a sum equal to five (5%) percent of the amount of such late payment.  Any late fee that will be charged shall be calculated on the total monthly payment which includes principal, interest and escrows.
>
> If any monthly payment hereunder or under the terms of the Consolidated Mortgage executed simultaneously herewith is not made within fifteen (15) days after the same first becomes due, or if there is a default in any of the other terms and conditions of this Note and Consolidated Mortgage executed simultaneously herewith, which default continues after any required notice to cure and such default has not been cured after any applicable grace period then and after the date of such default the Borrower shall pay interest at the default rate set forth below together with any prepayment penalty until Lender receives payment of the entire unpaid balance of the indebtedness, at the option of the Lender, at the highest of the default rates set forth below:
>
> (a)    Twenty (20%) percent per annum;
> (b)    Three (3%) percent above the highest prime rate published in the Wall Street Journal, but in no event less than 5.625%;

7

(c)     The maximum interest allowable by law; or

(d)     The actual loan interest rate.

In no event shall the default interest rate be higher than the maximum interest rate allowed by applicable law."

Nowhere in the Note does it exempt Debtor from the default rate if there is no acceleration, nor does the Note provide that default interest is due only upon an acceleration. Clearly, pursuant to the Note terms, after the first payment was in excess of fifteen (15) days late, ADHY had the right to the default interest for the balance of the term, even without acceleration of the balance, until the loan is repaid.

Therefore, the ten (10) day cure period required to impose acceleration as per paragraph 25 of the Mortgage is not a relevant factor to consider in determination of whether or not the default interest is due. Nothing in paragraph 25 refers to what actually triggers the Lender's right to impose the default rate. That paragraph refers only to what, at the Mortgagee's option, permits acceleration of the principal balance.1

The right of the Lender to impose default interest is instead found in the above paraphrased language of the Note and in paragraph 26 of the Consolidated Mortgage, and provides as follows:

"If any monthly payment hereunder or under the terms of the Note executed simultaneously herewith is not made within fifteen (15) days after the same first became due, or if there is a default in any of the other terms and conditions of this Consolidated Mortgage and the Note executed simultaneously herewith, which default continues after any required notice to cure and such default has not been cured after any applicable grace period then and after the date of such default the Mortgagor shall pay interest at the default rate set forth below

---

1 It should be noted that paragraph 25(j) of the Mortgage provides that the filing of this bankruptcy permits the Mortgagee to accelerate the balance as of the filing date without service of any notice at all. Although ADHY disputes the Defense's contention that the Acceleration Notice was misaddressed by Astoria, and not received by Debtor as certified in its Verified Answer with Counterclaims in the foreclosure Action, paragraph 65 (Exhibit "A").

together with any prepayment penalty until Mortgagee receives payment of the entire unpaid balance of the indebtedness, at the option of the Lender, at the highest of the rates set forth below:

    (a)    Twenty (20%) percent per annum;

    (b)    Three (3%) percent above the highest prime rate published in the Wall Street Journal, but in no event less than 5.625%;

    (c)    The maximum interest allowable by law; or

    (d)    The actual loan interest rate.

In no event shall the default interest rate be higher than the maximum interest rate allowed by applicable law."

Paragraph 26 clearly provides, in relevant part, that if any monthly payment hereunder or under the terms of the Note . . . is not made within fifteen (15) days after same first became due . . . then after the date of such default the Mortgagor shall pay interest at the default rate set forth below together with any prepayment penalty until Mortgagee receives payment of the entire unpaid balance of the indebtedness, at the option of the Lender, at the highest of the rates set forth below.

No doubt Debtor's counsel will argue that the omitted language following the words "first becomes due" provides for a notice to cure as well, but the use of the disjunctive "or" makes it clear that the notice to cure language that follows pertains strictly to "a default in any of the other terms and conditions of this Consolidated Mortgage and the Note", not to default in payment, for which no cure notice is required prior to imposition of the Default Rate.

Therefore, whether or not Astoria's Acceleration Letter properly accelerated the balance due or not has no bearing on Debtor's obligations to pay at the Default Rate. Instead, the Default Rate automatically is triggered automatically when a payment is not made by the fifteenth day of the month in which it becomes due.

In this case, the Debtor admits that it was at least three (3) months behind. Therefore, had it not caused acceleration by filing this bankruptcy, the express terms of the Note and paragraph 26 of the Mortgage, both expressly and consistently provide for the imposition of default rate for the balance of the loan term. This is further clarified in paragraph 27 of the Consolidated Mortgage, which in relevant part, provides as follows:

> "Upon a default, which default continues after any required notice to cure and which default has not been cured beyond any applicable grace period, under this Consolidated Mortgage or if the principal sum secured hereby shall not be paid at its maturity, or on its acceleration pursuant to Paragraph 25 or any other provision hereof, interest thereon shall be thereafter computed and paid at the default rate provided in Paragraph 26."

Therefore, acceleration is a mutually exclusive remedy and any notice or cure period applicable to acceleration is not applicable to triggering the Default Rate, which is triggered pursuant to paragraph 26, not 25, and requires no notice at all, since unpaid installments do not have a required notice to cure, but only a fifteen (15) day grace period, during which time Debtor admits it did not cure its default.

The language at page 3 of the Note, the second full paragraph, makes it clear that ADHY can enforce the Default Rate per paragraph 26 without causing an acceleration of the principal balance due:

> "In enforcing its rights under this Note and under the Consolidated Mortgage and related documents, the Lender shall have the right and option to pursue its remedies with respect to this Note, or to enforce the provisions of the Consolidated Mortgage, or any combination thereof, either simultaneously or in such order as the Lender shall deem in its best interest."

As far as the "waiver" argument of Debtor is concerned, the first full paragraph found on page 3 of the Note sets forth as follows:

> "No failure on the part of the Lender to exercise, and no delay in exercising any right or remedy hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise by the Lender of any right or remedy hereunder preclude any other or further exercise thereof, or the exercise of any other right or remedy that the Lender may have under this Note, the Consolidated Mortgage, applicable law, or otherwise. The receipt by the Lender of payments of interest or of any other sums due hereunder or under the Consolidated Mortgage, with knowledge on the part of the Lender of the existence of a default hereunder or under the Consolidated Mortgage, shall not be deemed a waiver of such default. No payment by the borrower or receipt by the Lender of less than the full amount of interest and principal and or other sums due hereunder or under the Consolidated Mortgage shall be deemed to be other than on account of all such interest and principal or other sums due and owing unless applied at the discretion of the Lender. The rights and remedies provided in this Note and the Consolidated Mortgage are cumulative and not exclusive and are in addition to all others that may be provided by other agreements, documents, and applicable law."

This language completely dispels any notion that Astoria's acceptance of the payments, which were returned by ADHY and redeposited by Debtor, created a waiver, as the Debtor had expressly agreed that such action would not be considered a waiver of any kind.

This is particularly the case where the Debtor accepted repayment from Astoria. The Debtor cannot be heard to contend that Astoria created a waiver where it willingly accepted the money back. This completely vitiates against any claim of waiver even had Debtor not expressly agreed in writing that it could and would not claim a waiver absent a writing signed by the Lender. Paragraph 42 of the Mortgage is in full accord:

> "No act, delay, omission or course of dealing between Mortgagor and Mortgagee shall be a waiver of any of the Mortgagee's rights or remedies under this Consolidated Mortgage, and no waiver, change, modification or discharge in whole or in part of this Consolidated Mortgage or of any obligation will be effective unless in writing signed by the Mortgagee. A waiver by the Mortgagee of any rights or remedies under the terms of this Consolidated Mortgage or the Mortgage Note or with respect to any obligation, on any occasion will not be a par to the exercise of any right or remedy on any subsequent occasion."

The Note, at page 6, is also in full accord:

11

"This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought."

The Debtor therefore cannot argue that there was a waiver of any kind absent a written waiver, which it has not produced, especially in light of its deposit of the returned check from Astoria.

Thus, Debtor's argument is fatally flawed in that it attempts to dispute the entirely separate issue of Default Rate with the issue of acceleration, which, incidentally, Debtor itself accomplished (if not already accomplished by Astoria's Acceleration Notice) by the filing of this bankruptcy when it was not bankrupt at all, for the sole purpose of attempting to find a forum that it believed would embrace its position, despite the fact that Debtor itself originally chose Supreme Court as a forum.

For these reasons, the legal argument of Debtor is fatally flawed, particularly the cases cited on the issue of acceleration.

**ARGUMENT**

**POINT I**

**NO NOTICE WAS REQUIRED TO TRIGGER DEFAULT INTEREST**

Before examining the Debtor's equitable arguments, it should be noted that the Debtor's argument that the Mortgagee failed to comply with any notice provisions does not hold water. Pursuant to the relevant part of paragraph 26 of the Consolidated Mortgage (attached to Debtor's Moving Papers as Exhibit "B"), default interest is triggered by the simple existence of a default in any "Monthly Payment . . . not made within fifteen (15) days after same became due", not upon any notice of default, and in such case the "Mortgagor shall pay interest at the default rate set forth below together with any prepayment penalty until Mortgagee receives payment of the entire unpaid balance of the indebtedness, at the option of Lender, at the highest of the rates set forth below:".

In this case, the Debtor does not deny that it was in default. The Debtor argues that the Lender failed to provide notice of default as required by the loan documents to invoke acceleration. The notice provisions the Debtor cites are contained in paragraph 25 of the Mortgage and they relate solely to the Lender's right to accelerate payment. There is no reference to paragraph 26 to any notice requirement with respect to application of the default rate of interest. Accordingly, the Mortgagee respectfully suggests that the Debtor's notice argument is contradicted by the loan documents, and does not provide a valid reason for this Court deny default interest.

13

## POINT II

## THE WEIGHT OF SECOND CIRCUIT AUTHORITY HOLDS THAT THERE IS NO BASIS TO REDUCE DEFAULT INTEREST FOR THE PURPOSE OF BENEFITTING EQUITY HOLDERS WHERE A DEBTOR SEEKS TO REINSTATE A SECURED CLAIM UNDER SECTION 1124(2) OF THE BANKRUPTCY CODE

Alternately, the Debtor argues that the Mortgagee is not entitled to default interest because such interest is a disguised penalty.

The weight of Second Circuit authority, however, holds that there is no basis to reduce default interest for the purpose of benefitting equity holders where a debtor seeks to reinstate a secured claim under section 1124(2) of the Bankruptcy Code, *E.g. In re General Growth Properties, Inc.*, 451 B.R. 323 (Bankr. S.D.N.Y., 2011); *accord In re 139-141 Owners Corp.*, 313 B.R. 364 (Bankr. S.D.N.Y., 2004). In this case, aside from the Mortgagee, the total of claims interposed in this case add up to slightly over $45,000.00 with the largest creditor being Con Edison (see Claims Summary, Exhibit "E"). Thus, the Debtor itself is the only party in interest that would benefit from a reduction in default interest. Based upon the law in the Second Circuit there should be no consideration of avoidance of default interest where, as per the admissions of the Debtor, and pursuant to its prosed plan, no other creditor will be impaired.

And even were the remaining creditors impaired, which they are not going to be under the proposed Plan of Reorganization whether or not there is default interest, in the Second Circuit there is a presumption in favor of applying the default rate of interest set forth in a contract between a lender and a debtor. *See, e.g., Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959); *In re Urban Communicators PCS Ltd. P'ship*, 394 B.R. 325 (S.D.N.Y. 2008); *In re Adejobi*, 404 B.R. 78 (Bankr. E.D.N.Y. 2009); *In re South Side House*, 451 B.R. 248, 264 (Bankr. E.D.N.Y. 2001);

14

*In re 139-141 Owners Corp.*, 313 B.R. 364 (Bankr. S.D.N.Y. 2004); *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122 (Bankr. E.D.N.Y. 2002); *In re Vest Assocs.*, 217 B.R. 696, 702 (Bankr. S.D.N.Y. 1998). The presumption in favor of the contractual default rate is rebuttable by a debtor based only upon equitable considerations, none of which have been enunciated by the Debtor, and none of which are present in this case.

In *in re Sutton Realty LLC* 2012WL 6681845, 12-10119 (SMB) December 21, 2012, like this case, the Court found that a mere debtor's dissatisfaction with the size of the default rate was insufficient to invoke disallowance of default interest, absent any of the other equitable considerations. At page 7 hereof, the Court held:

> "Here, while the default rate is about four times the non-default rate, it is nevertheless the presumptive rate, and Sultan has failed to offer any evidence, beyond the size of the Default Rate itself, to rebut the presumption…. Most important, Sultan is solvent, and the application of the default rate will not prejudice its creditors. Instead, "[r]educing the contract interest payable by a solvent debtor would unfairly grant a windfall to its equity." *785 Partners,* 470 B.R. at 134."

In this case, there is no issue as to whether there was an Event of Default. The Debtor missed three successive payments, which unequivocally, pursuant to its Note with Astoria, triggered imposition of default interest without any notice requirement. The loophole that the Debtor hangs its hat on regarding the alleged misdirection or non-receipt of the Acceleration Notice, which it had already long ago in both the Foreclosure and Declaratory Actions, has admitted receipt of, is a non-starter as the validity or non-validity of the Acceleration Notice has no bearing on the issue of default interest. ADHY, as a purchaser of the Note for fair value, was understandably unaware of the change of address issue at the time its Objection to Confirmation was made, particularly because Debtor had already admitted receipt, but, as shown herein, it was an inconsequential error as concerns ADHY's right to the default interest, and ADHY's claim for

15

default interest set forth in Claim Number 3 remains unaffected.

As explained in *In re P.G. Realty Co.*, 220 B.R. 773, 780 (Bankr. E.D.N.Y. 1998), courts should not deviate from the application of the contract default interest rate except only in very limited circumstances: "where there has been misconduct by the creditor, where application of the statutory interest rate would cause direct harm to the unsecured creditors, where the statutory interest rate is a penalty, or where its application would prevent the Debtor's fresh start". Applying these factors, it is clear that the equitable considerations should not rebut the presumption in favor of applying the default rate contained in the applicable contract documents.

In that regard, any discussion of equitable relief in favor of the Debtor, needs to begin with the fact that the Debtor has unclean hands. This Debtor has no business being in Bankruptcy Court, save for its desire not to pay default interest which it is contractually obligated to pay and which it can easily pay without impairment of a single other creditor. The Court should not overlook the fact that the Borrower-Debtor "cashed out" in the June 7, 2005 transaction to the tune of $1,296,387.17, which it had at its disposal all this time, which sum was consolidated in 2005 with pre-existing debt to form a single lien of $2,250,000.00. Thus, Debtor has already mortgaged its equity and should not be heard to complain that its failure to live up to its obligations of repayment has consequences.

In a single asset real estate case where a reinstatement is proposed, as contrasted to an ongoing business with numerous employees, suppliers and post-petition long term debt to creditors, the fresh start concept does not fit very well. In other words, in this case, the result of avoiding default interest simply means that any relief from default interest goes into the Debtor's personal coffers, and benefits no one but itself. This is not the purpose or intent of bankruptcy

16

laws, designed to protect creditors and provide a fresh start to the truly bankrupt. And as set forth above, the emerging weight of authority, particularly in the Second Circuit authority, holds that such a benefit to equity owners is unfair because it violates the *Ruskin v. Griffiths* principle that Courts are required to honor and enforce contracts.

In summary, the Debtor's conduct should preclude the Debtor from demanding equitable relief, but in any event, the Lender's conduct provides no basis for such relief, nor, in these circumstances, does the fresh start concept provide a basis to disregard the contractual agreement between the parties.

## POINT III

## <u>DEBTOR'S ESTOPPEL/WAIVER ARGUMENT CANNOT BE MAINTAINED.</u>

As set forth above, both the Consolidated Mortgage and Note each provide that no waiver is valid absent a written instrument executed by the Mortgagee.

In *in re Sutton Realty LLC* 2012WL 6681845, 12-10119 (SMB) December 21, 2012, confirms that those clauses are fully enforceable:

> "Furthermore, the *Mortgage* states that after a default, "no acceptance of full or partial Debt Service during the continuance of any such breach, shall constitute a waiver of any such breach" and "no breach thereof, shall be waived, altered or modified except by a written instrument executed by the Mortgagee." (*Mortgage* at § 18(a).) The parties never waived Sultan's breach in a written instrument signed by INB or Funding. Accordingly, INB's acceptance of late monthly mortgage payments, including the September 7 payment that satisfied the July 2011 mortgage bill, did not waive the breach arising from Sultan's failure to make the August or September 2011 monthly payments, or estop INB or Funding from pursuing their rights and remedies based upon those breaches."

In this case, the Debtor not only failed to procure a written agreement waiving the default, but actually accepted repayment of the moneys from Astoria. There is no basis whatsoever to find a waiver occurred here.

18

## CONCLUSION

WHEREFORE, for the reasons set forth herein, and for the further reasons set forth in ADHY's Objection to Disclosure Statement and Confirmation of Plan, annexed hereto as Exhibit "F", which are incorporated by reference herein to avoid repetition (minus original exhibits), ADHY respectfully requests that the Bankruptcy Court deny the relief requested in Debtor's Motion to Consider Debtor's Objection to That Portion of Claim Number 3 Filed by ADHY Advisors, LLC Seeking Interest at the Default Rate of 20%, and such other and further relief as may be just and proper.

DATED:        Great Neck, New York
              August _____, 2013

                              **BERLINER & PILSON, ESQS.**
                              Attorneys for ADHY Advisors LLC
                              40 Cuttermill Road, Suite 308
                              Great Neck, New York 10021
                              Tel No.:  (516) 304-5555

                              By:    _____
                                     Richard J. Pilson, Esq. (RP 1165)

19